UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| GGNSC FRANKFORT, LLC, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil No.: 14-30-GFVT |
| V. | ) | |
| | ) | |
| DEBRA TRACY, as Administratrix | ) | **MEMORANDUM OPINION** |
| of the Estate of | ) | **&** |
| DORIS CHRISTOPHER, deceased, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Doris Christopher, a former resident of the Golden Living Center facility in Frankfort, Kentucky, signed an arbitration agreement prior to moving into the facility. Sadly, Defendants allege that Ms. Christopher suffered physical and emotional injuries due to inadequate care that resulted in an expedited, unnatural deterioration in her health and in her eventual death. The parties now contest how and where the claims arising out of these alleged injuries are to be adjudicated.

**I**

On March 17, 2006, Doris Christopher admitted herself into the Golden Living Center in Frankfort, Kentucky. [R. 1 at 4.] The nursing home is owned and operated by the Plaintiffs. Upon admission, Ms. Christopher signed a "RESIDENT AND FACILITY ARBITRATION AGREEMENT," wherein she agrees to arbitrate "[a]ny and all claims, disputes, and controversies arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident." [R. 1-2.] Ms.

Christopher lived in the facility between June 2008 and May 2014, except for the times in which she was hospitalized.  [R. 1 at 1.]

Two actions are presently pending.  On March 17, 2014, Ms. Tracy brought suit in Franklin Circuit Court, Case No. 14-CI-00301, charging Golden Living with negligence, medical negligence, corporate negligence, a violation of long term care resident's rights, and wrongful death.[1]  [R. 1-1; R. 4-1 at 1-2.]  Soon thereafter, on April 16, the instant suit was filed wherein Golden Living moves to compel arbitration and enjoin the Defendant from further pursuing the state court action.  [R. 1.]  The Defendants answered with a motion to dismiss.  [R. 4.]  Because the Court finds that it has jurisdiction, no reason to abstain, and because the Defendant's arguments regarding the agreement's enforceability fail, the motion to dismiss will be DENIED.

## II

## A

## 1

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense.  Fed.R.Civ.P. 12(b)(1).  A motion to dismiss under Rule 12(b)(1) is different than a motion to dismiss under Rule 12(b)(6) because it challenges the Court's power to hear the case before it.  When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove that jurisdiction exists.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  In answering this question, the Court is

---

[1]      The suit is actually filed against GGNSC Frankfort, LLC d/b/a Golden Living Center - Frankfort; GGNSC Administrative Services, LLC d/b/a Golden Ventures; GGNSC Holdings, LLC d/b/a Golden Horizons; GGNSC Equity Holdings, LLC; GGNSC Equity Holdings II, LLC; Golden Gate National Senior Care, LLC d/b/a Golden Living; Golden Gate Ancillary, LLC d/b/a Golden Innovations; GGNSC Clinical Services, LLC d/b/a Golden Clinical Services; GPH Frankfort, LLC.  For simplicity, this Court will refer to those parties sued in the State Court action cumulatively as "Golden Living."  With the exception of administrators Ann Phillips, Robert Durham, and Herschel B. Sedoris, III, these parties are all Defendants to this action.

"empowered to resolve factual disputes" and need not presume that either parties' factual

allegations are true.  *Id.*

**2**

Federal Rule of Civil Procedure 12(b)(7) provides that a defendant may assert failure to

join a party under Rule 19 as a defense.  Fed.R.Civ.P. 12(b)(7).  The relevant portion of Rule 19,

which governs the joinder of parties, is reproduced below:

> A person…must be joined as a party if: **(A)** in that person's absence, the court cannot accord
> complete relief among existing parties; or **(B)** that person claims an interest relating to the
> subject of the action and is so situated that disposing of the action in the person's absence
> may: **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or
> otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.  "[R]ule [19] is not to be applied in a rigid manner but should instead be

governed by the practicalities of the individual case.  *Keweenaw Bay Indian Cmty. v. State*, 11

F.3d 1341, 1346 (6th Cir. 1993).

**3**

In a motion to dismiss pursuant to Rule 12(b)(6), "[t]he defendant has the burden of

showing that the plaintiff has failed to state a claim for relief."  *DirecTV, Inc. v. Treesh*, 487 F.3d

471, 476 (6th Cir. 2007) (*citing Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)).  When

reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most

favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in

favor of the plaintiff."  *Id.* (citation omitted).  Such a motion "should not be granted unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief."  *Id.* (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)).

The Court, however, "need not accept as true legal conclusions or unwarranted factual

inferences."  *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

Moreover, the facts that are pled must rise to the level of plausibility, not just possibility – "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  According to the Sixth Circuit, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

**B**

As a threshold matter, Defendants argue that this Court lacks subject matter jurisdiction, that indispensable parties are not present, and that even if jurisdiction is found, the Court should abstain from hearing the case.  The Court will consider these arguments in turn.

**1**

Both parties agree that the Federal Arbitration Act ("FAA") does not independently constitute a grant of subject matter jurisdiction.  9 U.S.C. § 4; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 26 n. 32 (1983).  Instead, the Plaintiff must prove that circumstances exist to justify this Court's exercise of jurisdiction.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action...for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (Federal Arbitration Act.)  This Court has original "diversity" jurisdiction over all civil actions when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" parties who are "citizens of different States."  *See* 28 U.S.C. § 1332(a)(1).  The Plaintiffs assert that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000.  [R. 1 at 2-4.]  Defendant disagrees, arguing

that the parties are not diverse, so this Court must dismiss the action for want of subject matter jurisdiction.[2]  [R. 4-1 at 3-18.]  In order for the Court to come to this conclusion, the Defendant encourages the Court to "look through" the arbitration action, and beyond the parties listed on the pleadings, to consider the residence of the parties named in the State Court action.  [*Id*.]  If the Court did this, nursing home administrators Ann Phillips, Robert Durham, and Herschel B. Sedoris, III, who are parties to the state-court case and Kentucky citizens, would destroy diversity jurisdiction.  Defendant alleges that these administrators owed Ms. Christopher duties arising under the laws of Kentucky, are covered by the arbitration agreement, and should be considered for purposes of determining whether diversity of citizenship exists.  Why should the Court consider the residence of these non-parties?  The Defendants contend the Supreme Court's decision in *Vaden v. Discover Bank*, 556 U.S. 49 (2009) answers this question.

The Chief Judge in this District recently confronted this identical legal issue.  She summarized the Supreme Court's holding in *Vaden* as follows:

> In *Vaden,* Discover Bank sued a credit card holder in state court to recover past-due charges. The credit card holder filed a counterclaim, also asserting state-law claims. But Discover Bank believed these claims were preempted by federal law, and filed an action in federal district court to compel arbitration of the counterclaims. The Supreme Court held that the district court lacked jurisdiction because the federal issue arose within the context of the state-court counterclaim, and federal courts cannot consider counterclaims when assessing federal question jurisdiction. Accordingly, the Supreme Court directed district courts to "look through" the arbitration action and determine whether federal question jurisdiction exists based on the underlying state-court suit. *Id.* at 62, 129 S.Ct. 1262.

*Brookdale Sr. Living Inc. v. Stacy*, No. CIV.A. 5:13-290-KKC, 2014 WL 2807524, at *3 (E.D. Ky. June 20, 2014), *appeal docketed*, No. 14-5848 (6th Cir. July 14, 2014).  As in this case, the Defendant nursing home seeking dismissal in *Stacy*, argued that "the logic of *Vaden* applies with

---

[2]     The Plaintiffs do not assert that there is a Federal Question nor is there a question as to whether the amount in controversy exceeds $75,000.  The only question raised concerning jurisdiction is whether the diversity of citizenship requirement has been satisfied.

equal force in cases resting on diversity jurisdiction." *Id*. The Court recognized that the argument was inapposite because "the Supreme Court limited its approval of the 'look through' doctrine to cases involving Federal Question Jurisdiction," specifically noting that the Supreme Court:

> approve[s] the "look through" approach *to this extent:* A federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law; in keeping with the well-pleaded complaint rule ... a federal court may not entertain a § 4 petition based on the contents, actual or hypothetical, of a counterclaim.

*Stacy*, 2014 WL 2807524, at *782 (quoting *Vaden,* 556 U.S. at 62 (emphasis added)).

This Court now joins a growing contingent of Courts, both in this District and outside of it, that have concluded that *Vaden* only applies to cases where Federal Question jurisdiction is asserted. *See Richmond Health Facilities-Kenwood, LP v. Nichols*, No. CIV.A. 5:14-141-DCR, 2014 WL 4063823, at *5 (E.D. Ky. Aug. 13, 2014); *Brookdale Senior Living, Inc. v. Caudill*, No. CIV.A. 5:14-098-DCR, 2014 WL 3420783, at *4 (E.D. Ky. July 10, 2014); *Stacy*, 2014 WL 2807524, at *4;  *Credit Acceptance Corp. v. Davisson,* 644 F.Supp.2d 948, 953 (N.D.Ohio 2009) ("the *Vaden* Court explicitly limited its holding to cases where the controversy underlying the § 4 petition involves *federal-question* jurisdiction"); *Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 490-91 (8th Cir. 2010) (The existence of diversity jurisdiction in an action to compel arbitration under the FAA is determined "by the citizenship of the parties named in the proceedings before the district court, plus any indispensable parties who must be joined pursuant to Rule 19.")  Because it is clear that *Vaden* does not apply in diversity cases, Defendant's argument that the Court must "look through" and consider the residence of the administrators fails.

**2**

Defendants next argue for dismissal on the grounds that the Plaintiffs failed to join the

aforementioned administrators, who they deem to be necessary and indispensable parties to this action.  [R. 4-1 at 18-23.]  While the administrators might be necessary, they are not indispensable so dismissal would be inappropriate.

"Rule 19 of the Federal Rules of Civil Procedure establishes a three-step analysis for determining whether a case should proceed in the absence of a particular party." *PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 200 (6th Cir. 2001).  First, the Court must determine whether the party is necessary under Rule 19(a).  *Id.*  A party's presence is determined to be necessary or "required" under that rule if:

> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  Second, if it is determined that the party is necessary, then the Court must consider whether the person is subject to service of process and also if their joinder will deprive the court of subject matter jurisdiction.  *PaineWebber,* 276 F.3d at 200; Fed. R. Civ. P. 19(a).  Third, "if a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  In deciding, the Court is to consider:

> **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> **(2)** the extent to which any prejudice could be lessened or avoided by: **(A)** protective provisions in the judgment; **(B)** shaping the relief; or **(C)** other measures;

(**3**) whether a judgment rendered in the person's absence would be adequate; and

(**4**) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  The action must only be dismissed if, after considering these factors, the Court concludes that the non-joined person is indispensable under Rule 19(b).  *Id.; PaineWebber,* 276 F.3d at 200.

First, Defendants argue that the administrators are necessary parties because complete relief cannot be granted in their absence.  [R. 4-1 at 20.]  According to Defendants, without the administrators' "presence … actions against them would be left outstanding from the underlying controversy."  [*Id.*]  In *GGNSC Louisville Hillcreek, LLC v. Warner,* No. 3:13-CV-752-H, 2013 WL 6796421, at *3 (W.D. Ky. Dec. 19, 2013), the Court considered whether identically situated administrators were necessary under Rule 19(a) and concluded that they were.  That Court noted that the claims against the administrator "and the [plaintiffs] are based on the same occurrence— negligence that resulted in injury to [the resident]."  *Id.*  As in this case, the arbitration agreement governed claims against the [plaintiffs] and the administrator."  [*Id.*]  Finally, the Court recognized that if the Federal Court and the State Court reached "different conclusions regarding whether the arbitration agreement is enforceable," that the administrator "would face inconsistent procedural remedies."  [*Id.*]  On this basis, the Court concluded that the administrator was a necessary party.  [*Id.*]  This logic was later adopted and applied again in this district in *Stacy*, 2014 WL 2807524, at *783.

The second step is easy to resolve; the administrators are citizens of Kentucky so their joinder would destroy subject matter jurisdiction.  [R. 5 at 10 (Plaintiffs concede that "[t]he inclusion of the administrators in this action would destroy subject matter jurisdiction.")]  For

this reason, the Court must consider whether the administrators are indispensable parties.  Fed. R.Civ.P. 19(a); *PaineWebber,* 276 F.3d at 200.

Third, the Court must consider whether the administrators are *indispensable*— whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed.R.Civ.P. 19(b).  Plaintiffs argue that the administrators are not indispensable because the instant action only asks whether the arbitration agreement is enforceable.  The Defendants disagree, arguing that the administrators are indispensable because they are "named beneficiaries of the exact same arbitration agreement as Plaintiffs, and because the actions of Plaintiffs and administrators are intertwined in Defendant's claims in the underlying controversy."  [R. 4-1 at 22.]

As noted earlier, the following factors guide Courts in their consideration of whether a party is indispensable:

> **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> **(2)** the extent to which any prejudice could be lessened or avoided by: **(A)** protective provisions in the judgment; **(B)** shaping the relief; or **(C)** other measures;
>
> **(3)** whether a judgment rendered in the person's absence would be adequate; and
>
> **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  First, the risk of having to proceed in two different forums is real but, as explained by the Sixth Circuit, this is a risk that the defendants assumed when they decided to file the state court action instead of demanding arbitration under the agreement.  *See PaineWebber,* 276 F.3d at 202.  Second, as recognized by that Court and many district courts since, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the

FAA's policy that strongly favors arbitration." *Id.* at 203 (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp,* 460 U.S. 1, 20 (1983)). The State Court could interpret the contested arbitration agreement differently but the chances of this happening are slim. In sum, even if the Court proceeds without the administrators, the risk of prejudice is minimal and does not justify their being categorized as "indispensable." As explained in *PaineWebber,* the second factor is less important when the potential prejudice discussed in the first step is small. *Id.* at 205. Third, while the Defendants argue that the administrators "acted in concert and contributed to Doris Christopher's injuries, pain, humiliation, and death," they also concede that "a party's status as a joint tortfeasor does not make that person an indispensable party *per se.*" [R. 4-1 at 19 (*citing Temple v. Synthes Corp.*, 498 U.S. 5, 7-8 (1990).] *See also Warner*, 2013 WL 6796421, at *4. Finally, the Plaintiffs would have an adequate remedy if the action were dismissed because they could proceed to arbitrate in State Court. This does not mean, however, that they should be forced into utilizing the State Court forum. As the Sixth Circuit explained in *PaineWebber,* "the potential existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice." *PaineWebber,* 276 F.3d at 205 (quoting *Local 670, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am.,* 822 F.2d 613, 622 (6th Cir. 1987)).

In support of their position, the Defendants argue the above factors but also direct the Court to *Cytec Industries, Inc. v. Powell,* 630 F.Supp.2d 680 (N.D.W.Va.2009), a district court opinion from West Virginia. In considering an identical indispensability argument, the *Stacy* Court had the opportunity to reflect on *Cytec:*

> In *Cytec Industries, Inc. v. Powell,* 630 F.Supp.2d 680 (N.D.W.Va.2009), the court found that an alleged joint tortfeasor was indispensable to a suit to compel arbitration. The court explained that if the case were to proceed without the non-diverse party, the plaintiff in the state court would be forced to pursue its claims in two different forums, and could be

subject to potentially conflicting interpretations over the validity of the arbitration agreement. Drawing on Fourth Circuit precedent, the court found that the duplicative litigation and potentially inconsistent legal conclusions over the arbitration agreement created sufficient prejudice to deem the nonjoined party indispensable. *Id.* at 686.

*Stacy*, 2014 WL 2807524, at *5. As a district Court opinion from West Virginia, *Cytec* has no precedential effect on this Court. Additionally, the conclusion reached in *Cytec* directly contradicts the holdings of many courts in this District and beyond that nursing home administrators who are named as defendants in parallel state court actions are not indispensable parties to the parallel section 4 arbitration action pending in Federal Court. *See Nichols*, 2014 WL 4063823, at *5; *Stacy*, 2014 WL 2807524, at *6; *Warner*, 2013 WL 6796421, at *4. As the *Stacy* Court noted, the Sixth Circuit has, without specifically referencing the opinion, dismissed the logic employed in *Cytec:*

> Although we acknowledge the seriousness of [the defendant's] concerns, his characterization of the risks fails to take into account several important factors. These considerations indicate that the potential prejudice to [the defendant] or [the nonjoined party] if this action proceeds without [the nonjoined party] is minimal.
>
> As an initial matter, the possibility of having to proceed simultaneously in both state and federal court is a direct result of [the defendant's] decision to file suit naming PaineWebber and [the nonjoined party] in state court rather than to demand arbitration under the Master Account Agreement.
>
> ...
>
> Even if the parallel proceedings were not the result of [the defendant's] pending state court action, the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration.
>
> ...
>
> [The possibility that] the federal and state courts will reach conflicting interpretations of the arbitration clauses does not present the degree of prejudice necessary to support a conclusion that [the nonjoined party] is an indispensable party. This possibility exists because [the defendant] chose to name both PaineWebber and [the nonjoined party] as defendants in the state court action.

*Stacy*, 2014 WL 2807524, at *6 (quoting *PaineWebber,* 276 F.3d at 202-06. Finally, as the Plaintiffs note in their brief, many Circuit Courts including the Sixth Circuit have similarly held that "in the context of a federal action to compel arbitration… the individual defendants in the state court action were not indispensable parties to the federal action." [R. 5 at 8.] *See Northport*, 605 F.3d at 483 ("In the arbitration context, to our knowledge every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration."); *Brown v. Pac. Life Ins. Co.,* 462 F.3d 384, 393–94 (5th Cir. 2006); *Am. Gen. Life & Acc. Ins. Co. v. Wood,* 429 F.3d 83, 92-93 (4th Cir. 2005); *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 945-46 (11th Cir. 1999); *Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 445-46 (2d Cir. 1995); *Bio-Analytical Servs., Inc. v. Edgewater Hosp., Inc.*, 565 F.2d 450, 453 & n.3 (7th Cir. 1977).

 In light of both Rule 19(b) and the voluminous case law, much of which is cited herein, the Court cannot find that the administrators are indispensable parties. As such, the Defendant's motion will be denied on this point and the action may proceed without the administrators' presence.

**3**

 In *Colorado River,* the Supreme Court recognized that federal courts should sometimes abstain from exercising jurisdiction over a case that "involves substantially the same issues and substantially the same parties as a parallel case in state court." *Total Renal Care, Inc. v. Childers Oil Co.,* 743 F.Supp.2d 609, 612 (E.D.Ky. 2010) (*citing Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, at 817 (1976)). However, because "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," *Quackenbush v. Allstate Ins. Co.,* 517 U .S. 706, 716 (1996), abstention "'is an extraordinary and narrow

exception to the duty of a District Court to adjudicate a controversy properly before it.'"
*Colorado River,* 424 U.S. at 813 (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S.
185, 188–189 (1959)); *see also Gray v. Bush,* 628 F.3d 779, 783 (6th Cir. 2010). For this reason,
"[o]nly the 'clearest of justifications' will support abstention." *RSM Richter, Inc. v. Behr Am.,
Inc.,* 729 F.3d 553, 557 (6th Cir. 2013) (quoting *Rouse v. DaimlerChrysler Corp.,* 300 F.3d 711,
715 (6th Cir. 2002)).

When determining whether abstention is appropriate under the *Colorado River* doctrine,
district courts consider and weigh eight factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether
> the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation;
> ... (4) the order in which jurisdiction was obtained[;] ... (5) whether the source of
> governing law is state or federal; (6) the adequacy of the state-court action to protect the
> federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and
> (8) the presence or absence of concurrent jurisdiction.

*Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) (quoting
*PaineWebber,* 276 F.3d at 206.)

Defendants concede that the first factor is inapplicable and that the second factor is
"neutral" as both Courts are seated in Frankfort, Kentucky. [R. 4-1 at 24.] As such, these two
factors weigh against abstention and in favor of exercising jurisdiction. *See PaineWebber*, 276
F.3d at 207 (Where no property is at issue, the first factor supports exercising jurisdiction and
when the State and Federal Courthouses are in the same city, the second factor also weighs
against abstention.); *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998) (same);
*Stacy*, 2014 WL 2807524 at *785.

The third factor, which aims to avoid piecemeal litigation requires undergoing an analysis
that is similar to the one undertaken when determining whether parties are indispensable in that it
asks the Court to consider "whether there is a 'clear federal policy evinc[ing] ... the avoidance of

13

piecemeal adjudication' found within the statutory scheme at issue." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (quoting *Colorado River*, 424 U.S. 800, 819); *see also Stacy*, 2014 WL 2807524, at *785. No such policy exists when considering a case under the Federal Arbitration Act. *Id*. (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("[T]he Arbitration Act requires district courts to compel arbitration … when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."); *Moses H. Cone,* 460 U.S. at 20 ("[R]elevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement."); *GGNSC Vanceburg, LLC v. Taulbee,* No. 5:13-CV-71-KSF, 2013 WL 4041174, at *4 (E.D. Ky. Aug. 7, 2013), appeal dismissed (Mar. 13, 2014) (same).

The fourth factor weighs in favor of abstention as the State Court case was filed a month earlier. The fifth factor weighs in favor of exercising jurisdiction because "the FAA provides the source of law for interpreting the arbitration clause[]" in Ms. Christopher's agreement. *PaineWebber,* 276 F.3d at 208 (*citing First Franklin Fin. Corp.,* 144 F.3d at 1365); *see also Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1266 (5th Cir. 1994) ("[I]n this federal case— concerning *only* whether the case should be submitted to arbitration under § 4 of the FAA— federal law provides the rule of decision on the merits.") This factor is "less significant the state and federal courts have concurrent jurisdiction." *PaineWebber*, 276 F.3d at 208 (*citing Romine,* 160 F.3d at 342.)

The sixth factor, whether the state-court action may adequately protect the federal plaintiff's rights, "presents the strongest basis for abstaining" because "[t]he FAA extends Congress's legislative authority to the maximum extent permitted under the Commerce Clause,

14

and is therefore binding on state courts that interpret contracts involving interstate commerce. *PaineWebber*, 276 F.3d at 208 (*citing Southland Corp. v. Keating,* 465 U.S. 1, 16 (1984); *see also Nationstar Mortgage LLC v. Knox*, 351 F. App'x 844, 852 (5th Cir. 2009) ("[T]he state court is a concurrent forum where motions to compel arbitration may be considered on the merits, pursuant to 9 U.S.C. § 4.")

Factor seven is similar to the fourth factor in that it asks the Court to consider the relative stage of the two proceedings.  The state court action is still in the pleading stage as the Plaintiffs filed their answer in state court on the same day that they filed this action.  [R. 5 at 16.]  In *PaineWebber,* the Sixth Circuit concluded this factor "point[ed] toward exercising jurisdiction" where "the state court action had not progressed to any significant degree."  276 F.3d at 208.  The same conclusion is true here.

Under the eighth factor, the Court considers whether there is concurrent jurisdiction.  There is concurrent jurisdiction in this case.  Here, however, concurrent jurisdiction exists between the state and federal courts, but "a congressional act provides the governing law and expresses a preference for federal litigation."  Consequently, this factor is insufficient to justify abstention.  *PaineWebber,* 276 F.3d at 208.

 "The decision to dismiss a federal action because of a parallel state-court action rests 'on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'"  *Great Earth*, 288 F.3d at 886 (quoting *Moses,* 460 U.S. at 16).  Factors four, six, and eight weigh in favor of abstention, but neither factors four or eight provide a strong reason to abstain.  In light of these circumstances, and the fact that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River*, 424 U.S. at 813, the Court will not abstain.

This is the same conclusion reached by numerous other Courts in this district who have confronted the same question in similar nursing home litigation. *Caudill*, 2014 WL 3420783, at *6-7; *Stacy*, 2014 WL 2807524, at *8; *Hibbard*, 2014 WL 2548117, at *2-4; *Hanley,* 2014 WL 1333204, at *5-8; *Taulbee,* 2013 WL 4041174, at *3-5; *see also Warner*, 2013 WL 6796421, at *4-6.  The Court has been made aware of no case where a court in this district has decided this issue differently.

## C

Now, having addressed the threshold issues, the Court turns to the Defendants substantive attacks on the arbitration agreement, which states that the parties agree "that any and all claims, disputes, and controversies…arising out of, or in connection with, or relating in an way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration."  [R. 1-2 at 1.]  By its very terms:

> This agreement to arbitrate includes, but is not limited to, any claim for payment, nonpayment, or refund for services rendered to the Resident by the Facility, violations of any right granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or claims based on any departure from accepted medical or health care or safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute, warranty, or any alleged breach, default, negligence, wantonness, fraud, misrepresentation, suppression of fact, or inducement.

[R. 1-2 at 1.]  In bold print, the agreement states that by signing, the "PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY."  [*Id*. at 2.]  It notes that the resident has a right to legal counsel and is signed by Ms. Christopher.  [*Id*.]

Defendant now moves to dismiss this action pursuant to Rule 12(b)(6), arguing that the arbitration agreement (1) does not evidence a contract involving interstate commerce, (2) is unconscionable, (3) is void against public policy, and (4) is impossible to perform.  [R. 4-1 at 28-

16

41.] The Defendant argues that these errors leave the Plaintiffs with no chance of success, making dismissal appropriate.

**1**

The Federal Arbitration Act provides that "a contract evidencing a transaction *involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). The phrase "involving commerce" has been interpreted as "the functional equivalent of the more familiar term 'affecting commerce'-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citation omitted). To this end, the Supreme Court has explained that the FAA provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause, [because] it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'-that is, 'within the flow of interstate commerce.'" *Id.* (citations omitted).

Defendants first argue that the arbitration agreement does not evidence a transaction involving interstate commerce, but is rather an agreement between Kentucky citizens and about services in Kentucky. [R. 4-1 at 29.] Because the arbitration agreement was not a condition of Ms. Christopher's admission to the facility, Defendant argues that it should be considered separate and apart from the admissions agreement which has more obvious ties to interstate commerce. [*Id.*] Plaintiffs disagree, contending that the arbitration agreement is part of the admissions agreement. Because the nursing home facility receives reimbursements from Medicaid and Medicare, houses residents from out-of-state and purchases supplies from out-of-state vendors they argue that the agreement *involves commerce*. [R. 5 at 20.]

17

Contrary to Defendant's argument, the arbitration agreement is only one piece of the larger admissions agreement. The arbitration agreement says as much:

> The parties to the Arbitration Agreement acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction involving interstate commerce governed by the Federal Arbitration Act.

[R. 1-2.] As in *Stacy* and *Caudill*, the arbitration agreement "is a component of a larger contract that evidences a transaction involving interstate commerce." *Caudill,* 2014 WL 3420783, at *9; (quoting *Stacy*, 2014 WL 2807524, at *14). The ties to interstate commerce are obvious.

First, a nursing home's acceptance of Medicare or Medicaid has consistently been found sufficient to establish an arbitration agreement's ties to interstate commerce. *See Taulbee,* 2013 WL 4041174, at *10-11; *Hanley,* 2014 WL 1333204, at *8. As noted in both *Taulbee* and *Hanley*, Golden Living's website confirms that it accepts payments from Medicare. The Court takes judicial notice of this fact. *See* http://www.goldenlivingcenters.com/expert-thinking/paying-for-healthcare.aspx.

Additionally, Kentucky Courts have recognized that "[t]he food, medicine, and durable medical supplies that [the plaintiff nursing home facility] provide[s] must come from somewhere," and that it is fair to bet some of these items are from out of the State. *Warner,* 2013 WL 6796421 at *8; *Stacy*, 2014 WL 2807524 at *14. As in those cases, Defendants do not claim that the services and goods provided all came from inside the borders of Kentucky. In fact, the Defendants seem to concede this is not the case when they argue that the Court should solely consider the arbitration agreement and disregard the fact that Plaintiffs engage in interstate commerce. [*See* R. 4-1 at 29-30.]

Finally, other Courts have consistently found such arbitration agreements enforceable under the FAA. In *Ping v. Beverly Enterprises, Inc.,* the Kentucky Supreme Court made clear its

18

position that the FAA applies to arbitration agreements in nursing home contracts. 376 S.W.3d 581, 589-90 (Ky. 2012) (listing cases). This issue has also been frequently litigated in Federal Courts, where the Plaintiff's view has been unanimously adopted. *See Caudill,* 2014 WL 3420783, at *9; *Stacy,* 2014 WL 2807524, at *13-14; *Hibbard,* 2014 WL 2548117, at *9-10; *Warner,* 2013 WL 6796421, at *7-8; *Taulbee,* 2013 WL 4041174, at *10-11; *Hanley,* 2014 WL 1333204, at *9-10.

**2**

Defendants next argue that the agreement is unconscionable. [R. 41 at 30-32.] Most of Defendants arguments generally attack arbitration agreements in the healthcare context. They argue that the "Agreement is a mass-produced, boiler-plate, pre-printed document, likely presented to the Defendant within a lengthy stack of admissions paperwork," that the admissions process is overwhelming, that there is a gross disparity of power between the nursing home and the applicant, that such agreements are designed to "protect the healthcare conglomerate," that arbitration is expensive and fees are undisclosed, and that under the rules governing the arbitration discovery is unreasonably truncated. [R. 4-1 at 30.] As has been said many Courts in this district, these arguments are without merit. The Defendant also argues the agreement is unconscionable as it "extends into perpetuity" and amounts to a "mutual servitude," since it was executed over two years prior to Ms. Christopher's admission to the nursing home. [R. 4-1 at 32-36.]

The doctrine of unconscionability is a narrow exception to the general rule that "absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Fin. Servicing Corp. v. Wilder,* 47 S.W.3d 335, 341 (Ky. Ct. App. 2001). As described by the Kentucky Courts,

> The doctrine [of unconscionability] is used by the courts to police the excesses of certain parties who abuse their right to contract freely. *It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain.*

*Id*. (*citing Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 439 (Ky. Ct. App. 1978)).  Such an unconscionable contract has been characterized as "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other."  *Id*. (quoting *Louisville Bear Safety,* 571 S.W.2d at 439.

There are two forms of unconscionability.  *Procedural unconscionability* "pertains to the process by which an agreement is reached."  *Id*. at FN 22.  Such complaints might relate to the size of the print, unclear language, and concerns raised regarding contracts of adhesion.  *Id*. "*Substantive unconscionability* 'refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.'" *Id.* (*citing Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)).  In the case at hand, the Defendant argues that the agreement is both substantively and procedurally unconscionable.  [R. 4-1 at 30.]

Defendant's specific argument that the agreement is void because it binds Ms. Christopher "into perpetuity" fails.  In the face of all the cases where Courts have found these agreements enforceable, the Defendant cites to only one case where a nursing home agreement was found to be void as a perpetual contract: a decision from the Boyle County Circuit Court. *See* R. 4-6.  That decision is not binding on this Court.  To adopt the Defendant's position on this point would require that the Court ignore the arbitration agreement's clear language, which provides that the agreement encompasses any and all claims "arising out of, or in connection with, or relating in any way to the Admission Agreement *or* any service or health care provided by the Facility to the Resident…"  [R. 1-2.]

20

Despite Defendant's protestations to the contrary, it cannot be said that the arbitration agreement falls into this narrow category of cases which "no man in his senses…would make." The agreement is (1) a separate document with the conspicuously bold title "RESIDENT AND FACILITY ARBITRATION AGREEMENT (NOT A CONDITION OF ADMISSION – READ CAREFULLY)," (2) the document is only three pages and in a normal size font, (3) contains no limitations on damages or causes of action that may be alleged, (4) does not shorten any applicable statutes of limitations, (5) is written in a manner that is easy to understand, (6) provided Ms. Christopher a window of time in which she could rescind the agreement, and (7) advised her of her right to seek legal counsel concerning the agreement. [R. 1-2 at 1-3.] *See Hanley,* 2014 WL 1333204, at *9 (discussing many of these factors).

This conclusion is supported by Courts in this district that have consistently rejected similar arguments that arbitration agreements in the context of nursing home admissions are unconscionable. *See Caudill,* 2014 WL 3420783, at *9-10; *Stacy,* 2014 WL 2807524, at *9-11; *Hibbard*, 2014 WL 2548117, at *5-8; *Warner*, 2013 WL 6796421, at *8-10; *Taulbee,* 2013 WL 4041174, at *9-11; *Hanley,* 2014 WL 1333204, at *9-10.[3]

**3**

Defendants also argue that the ADR agreement is void as against public policy. [R. 4-1 at 41-43.] This argument is meritless. The Supreme Court has recognized that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr.,*

---

[3]     Instead of considering the defendant's substantive arguments, the *Taulbee* Court referred to the Supreme Court's recent discussion of the potential unconscionability of arbitration agreements in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011), explaining that "the grounds available under [Section 2 of the FAA] must not be construed to include a state's policy preference for procedures incompatible with arbitration." *Taulbee,* 2013 WL 4041174, at *9-10. As the *Concepcion* Court put it, "[a]lthough § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." 131 S. Ct. 1740, 1748 (2011).

*Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012) (quoting *KPMG LLP v. Cocchi,* 132 S.Ct. 23, 25

(2011) *(per curiam)*).  As the Supreme Court has stated on numerous occasions, "[w]hen state

law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:

The conflicting rule is displaced by the FAA."  *Id.* (quoting *AT & T Mobility LLC v. Concepcion,*

131 S.Ct. 1740, 1747 (2011)).  As recently stated by another Court in this district: "any public

policy precluding the arbitration of claims against nursing homes or precluding persons with the

power to contract from entering into an arbitration agreement, would be preempted by the FAA."

*Taulbee,* 2013 WL 4041174, at *10.  Again, the same Courts that have consistently rejected

unconscionability arguments have also been unwilling to void agreements for reasons of public

policy.

**4**

Finally, the Defendant argues that the agreement is void as it is impossible to perform

because it states that the arbitration will take place "in accordance with the National Arbitration

Forum Code of Procedure," but the National Arbitration Forum  ("NAF") no longer administers

consumer related pre-dispute arbitration agreements.  [R. 4-1 at 36-41; R. 1-2 at 1.]  The

Plaintiffs maintain that whether the NAF administers these agreements is irrelevant since the

agreement only stated the NAF Code would apply, without selecting the NAF as the "forum."

[R. 5 at 27.]  Either way, the Plaintiffs contend this is not a material term of the agreement and

that Section 5 of the FAA authorizes the Court to appoint an arbitrator.  [*Id*. at 28.]  A similar

argument was considered in *Sun Healthcare Grp., Inc. v. Dowdy*, No. 5:13-CV-00169-TBR,

2014 WL 790916, at *13 (W.D. Ky. Feb. 26, 2014) although the arbitration agreement was a

little different in that case.  In *Dowdy,* the arbitration agreement only referenced the NAF Code

of Procedure once and there was "no indication that the usage of the NAF Code [was] integral to

22

arbitration of [the] matter." *Id*. Distinct from the case at hand, the agreement in *Dowdy* also included an express provision stating that the use of the NAF code was "not tantamount to the selection of NAF as the administrator of the arbitration," and the agreement provided a process for choosing an administrator. *Id*.

Despite the fact that there is no such explicit provision in the case at hand, there are insufficient indications, first, that the parties intended to arbitrate before a NAF arbitrator, and, second, that this is a material term in the agreement. In the case at hand, the NAF Code of Procedure is only referenced in one sentence, with contact information provided in a footnote. [R. 1-2 at 1.] The NAF is never mentioned in any context outside discussion of its code, and there is just no indication that the National Arbitration Forum was intended to administer the agreement. Section 5 of the FAA empowers Courts to designate or appoint an arbitrator when the agreement does not provide a method for selecting one. 9 U.S.C. § 5.

Without any greater indication that the parties intended for the NAF to administer the arbitration, or that this provision was a material term in the agreement, the Defendants cannot meet their burden under Rule 12(b)(6) and the Court cannot dismiss the complaint. This conclusion is consistent with the parties' clear intention to arbitrate, as was evinced in the arbitration agreement, and the FAA's oft-repeated policy favoring arbitration.

### III

The Court has reviewed the many arguments challenging this Court's jurisdiction, whether or not the proper parties are present for this case to proceed, and also the substance of the arbitration agreement itself. The Court has been presented with no compelling reason, as of yet, why the arbitration should not proceed. In addition to being consistent with the apparent wishes of Ms. Christopher, it is also consistent with the purposes behind the Federal Arbitration

23

Act, which governs in this case.  *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748

(quoting *Volt,* 489 U.S., at 478, 109 S.Ct. 1248) ("The 'principal purpose' of the FAA is to

'ensur[e] that private arbitration agreements are enforced according to their terms.'")

Accordingly, for all the aforementioned reasons, the Defendant's Motion to Dismiss [R.

4] is **DENIED**.


This the 31st day of March, 2015.


Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**